IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARRELL W. ROBERSON, | CIVIL NO. 22-00186 JAO-WRP |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |
| vs. | |
| MARK RECKTENWALD, et al., | |
| Defendants. | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This action arises from proceedings in the District Court of the Third Circuit, Puna Division, State of Hawai'i.  Pro se Plaintiff Darrell Roberson ("Plaintiff") alleges that his Fourteenth Amendment rights were violated in connection with those proceedings.  Defendants the Department of Public Works Division, County of Hawai'i ("DPW"), the State of Hawai'i Department of Health ("DOH"), the Hawai'i Supreme Court ("HSC"), the Honorable Mark E. Recktenwald ("CJ Recktenwald"), the Honorable Jeffrey Hawk ("Judge Hawk"), the State of Hawai'i (the "State"),[1] and Tamara Watson-Wade ("Watson-Wade") (collectively,

---

[1]  Defendants CJ Recktenwald, Judge Hawk, HSC, and the State will be collectively referenced as the "Judiciary Defendants."

"Defendants") seek dismissal pursuant to the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, sovereign immunity, qualified immunity, and judicial immunity; for lack of standing; for insufficient proof of service; and for failure to state a claim.  ECF Nos. 12, 21, 26, 37.  DPW substantively joins in DOH's and the Judiciary Defendants' motions to dismiss.  ECF Nos. 22, 30.

The Court elects to decide these motions without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii.  For the following reasons, the Court GRANTS Defendants' motions to dismiss and DPW's substantive joinders.  ECF Nos. 12, 21–22, 26, 30, 37.

## BACKGROUND

### A.    Factual History

Plaintiff filed this lawsuit in response to an adverse outcome in state district court.  In 2021, Watson-Wade, his former landlord, initiated a summary possession/landlord-tenant case claim against him and his co-tenant, along with a small claims case for damages and fees, in the District Court of the Third Circuit, Puna Division, State of Hawaiʻi.[2]  ECF Nos. 12-4, 12-7; Complaint, ECF No. 1

---

[2]  The Court takes judicial notice of the documents attached to DPW's and the Judiciary Defendants' motions.  Under Federal Rule of Evidence 201, a court may take judicial notice of facts "not subject to reasonable dispute" that either "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be

(continued . . .)

("Compl.") ¶ 11.  Judge Hawk presided over the small claims case, which is the case forming the basis of Plaintiff's present claims.  ECF No. 12-10.

On July 26, 2021, Plaintiff filed a "Counter Claim Civil Rights Complaint" in the small claims case, alleging that Watson-Wade fraudulently neglected to inform him that the dwelling he rented from her was unpermitted, and that electrical work was not completed by a licensed electrician.  ECF No. 12-8 at 1–2.  He also claimed that Watson-Wade ignored his reports of health and safety hazards and that she retaliated against him by seeking and obtaining an eviction.  *Id.* at 3–5.  Plaintiff asserted declaratory relief, inhuman living conditions, and retaliation claims, and sought injunctive relief and damages (compensatory and punitive).  *Id.* at 5–7.

---

(. . . continued)

accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)–(c)(1).  A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citations omitted); *see Bykov v. Rosen*, 703 F. App'x 484, 487 (9th Cir. 2017) (holding that the district court did not abuse its discretion by taking judicial notice of state court proceedings).  Courts may "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

During the course of the small claims proceedings — which the Court will hereinafter refer to as the state court proceedings — Plaintiff filed a number of motions that were denied.  ECF No. 12-10 at 4–8.  Following a trial on March 4, 2022, Judge Hawk ruled in Watson-Wade's favor and dismissed Plaintiff's counterclaim with prejudice.  *Id.* at 8.  Judgment entered on March 8, 2022.  *Id.*; ECF No. 12-9.

In this case, Plaintiff again avers that Watson-Wade subjected him to health and safety hazards, *e.g.*, mold, electrical issues, and an unpermitted structure, and refused to make necessary repairs to the rental building.  Compl. ¶ 21.  Plaintiff speculates that DOH and DPW — which he asserts must require that housing be in compliance with all state and federal laws concerning health and safety — not only permitted Watson-Wade to operate a rental business with substandard housing, but that they and the State collaborated with Watson-Wade to operate "unconstitutional living conditions."  *Id.* ¶¶ 16, 18, 21.

According to Plaintiff, Judge Hawk violated his constitutional rights by denying the right to conduct discovery, denying the right to present a defense, charging Plaintiff for his personal items, denying Plaintiff's motions and papers, and stating that his decisions were unappealable.  *Id.* ¶ 11.  Plaintiff believes that Judge Hawk was required to recuse himself because Plaintiff served him with another individual's lawsuit, and that Judge Hawk refused to recuse in order to

retaliate against him. *Id.* ¶ 15. Following his loss at trial, Plaintiff claims he attempted to file an appeal but was denied "in a very disrespectful manner" by an unidentified female at the district court window. *Id.* ¶¶ 12, 20. Plaintiff also attributes his inability to appeal to CJ Recktenwald and HSC's unconstitutional rule prohibiting appeals of small claims decisions. *Id.* ¶¶ 13–14.

## B.     Procedural History

Plaintiff commenced this action on April 19, 2022. *Id.* at 1. He invokes jurisdiction pursuant to a number of statutes. *Id.* ¶ 1. Relevant here, Plaintiff cites 42 U.S.C. §§ 1981, 1983, 1985, and 1986. *Id.* He asserts six causes of action without identifying the statutory provisions that apply: (1) denial of due process under the Fourteenth Amendment for his inability to appeal the district court decision (Count 1); (2) denial of due process under the Fourteenth Amendment because he was unable to present a defense (Count 2); (3) violation of his liberty interest under the Fourteenth Amendment requiring Defendants to adhere to the Hawaiʻi Constitution's guarantees of due process, equal protection, and freedom from harassment and retaliation from a judge (Count 3); (4) denial of due process under the Fourteenth Amendment based on CJ Recktenwald and HSC's promulgation of rules denying the ability to conduct discovery, present a defense, and appeal (Count 4); (5) retaliation against Plaintiff for filing the counterclaim, in violation of the Fourteenth Amendment (Count 5); and (6) violation of the U.S.

Constitution and Hawaiʻi Constitution because Plaintiff was subjected to health and safety hazards and because Defendants failed to require Watson-Wade to rent a safe structure meeting all federal and state safety codes (Count 6). *Id.* at 7–8. Count 6 also very broadly alleges — as if it is a concluding summary of the Complaint — that Defendants violated Plaintiff's Fourteenth Amendment rights by subjecting him to health and safety hazards and denying him the right to appeal. *Id.* ¶ 28.

Plaintiff fails to name the Defendants responsible for the alleged harms outlined in each Count except for Count 4. Counts 1 through 3 most directly pertain to Judge Hawk, but also implicate CJ Recktenwald and HSC, when liberally construed. Count 1 also appears to implicate the "Jane Doe" clerk at state district court who purportedly refused to file Plaintiff's appeal. *Id.* ¶ 20. Count 5 arguably pertains to Judge Hawk and Watson-Wade. Count 6 appears to be directed at DOH and DPW for their inaction, and liberally construed, to Watson-Wade. Although Count 6 also reiterates Plaintiff's inability to appeal, that is irrelevant to the crux of the claim, which concerns Plaintiff's health and safety.

Plaintiff requests: (1) injunctive relief preventing Defendants from retaliating against him for exercising his constitutional rights; (2) injunctive relief prohibiting Defendants from denying him the right to present a defense and conduct discovery; (3) injunctive relief declaring that his inability to appeal is

unconstitutional; (4) a declaration that denying the right to conduct discovery during trial is unconstitutional; (5) a declaration that Defendants be prohibited from creating a rule denying the right to appeal; (6) a declaration that refusing to require a landlord  to only rent permitted structures is unconstitutional and illegal; (7) a declaration that refusing to require a landlord to pass a safety inspection before renting a structure is illegal; (8) $5,000,000 in compensatory damages; and (9) $5,000,000 in punitive damages; (9) appointment of counsel and attorneys' fees; and (10) court costs and any other just relief. *Id.* at 9–10.

On May 13, 2022, DPW filed its Motion to Dismiss Plaintiff's Civil Rights Complaint with Jury Demand, Filed on April 19, 2022.  ECF No. 12.  On May 20, 2022, DOH filed its Motion to Dismiss Plaintiff's Civil Rights Complaint with Jury Demand Filed on April 19, 2022.  ECF No. 21.  DPW substantively joined in this motion.  ECF No. 22.  The Court ordered Plaintiff to respond to the motions by June 17, 2022, and for DPW and DOH to file replies by July 1, 2022.  ECF No. 24.

On June 20, 2022, the Judiciary Defendants filed a Motion to Dismiss with Prejudice Plaintiff's Civil Rights Complaint with Jury Demand, in which DPW substantively joined.  ECF Nos. 26, 30.  Because Plaintiff failed to timely respond to DPW's and DOH's motions to dismiss, the Court extended his deadline until July 1, 2022, and correspondingly extended DPW's and DOH's reply deadlines until July 15, 2022, but cautioned that should Plaintiff fail to respond, the motions

would be treated as unopposed.  ECF No. 27.  The Court also imposed an

opposition deadline of July 11, 2022 to the Judiciary Defendants' Motion to

Dismiss and a July 25, 2022 reply deadline, and notified Plaintiff that his deadline

would not be extended without a formal request and good cause.  *Id.*

On June 27, 2022, Plaintiff moved for a 30-day extension of his June 17,

2022 deadline.  ECF No. 28.  Noting that Plaintiff's request predated its sua sponte

deadline extension, the Court granted a limited further extension for Plaintiff to

respond to DPW's and DOH's motions to dismiss until July 8, 2022, and extended

DPW's and DOH's reply deadlines until July 22, 2022.  ECF No. 29.  The Court

also extended Plaintiff's response deadline to the Judiciary Defendants' Motion to

Dismiss until July 25, 2022, and the Judiciary Defendants' reply deadline until

August 8, 2022.  *Id.*

Plaintiff untimely filed his oppositions to Defendants' motions to dismiss on

July 13, 2022 and July 28, 2022.  ECF Nos. 31, 35.  DPW and DOH filed their

replies on July 22, 2022.  ECF Nos. 32, 33.  The Judiciary Defendants filed a reply

on July 26, 2022.  ECF No. 34.

On August 4, 2022, Watson-Wade filed a Motion to Dismiss.  ECF No. 37.

Plaintiff filed an opposition on August 25, 2022.  ECF No. 41.

## LEGAL STANDARDS

### A.      Rule 12(b)(1)

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint.[3]  *See* Fed. R. Civ. P. 12(b)(1).  A jurisdictional attack pursuant to FRCP 12(b)(1) may be facial or factual.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  A facial attack challenges the sufficiency of the allegations contained in a complaint to invoke federal jurisdiction, while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*

### B.      Rule 12(b)(6)

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However,

---

[3]  *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." (citations omitted)).

conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some

alterations in original).  If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## DISCUSSION

Defendants seek dismissal on the following grounds:  (1) *Rooker-Feldman* doctrine; (2) lack of standing; (3) Eleventh Amendment and/or sovereign immunity; (4) qualified immunity; (5) judicial immunity; (6) insufficient proof of service; and (7) failure to state a claim.  ECF Nos. 12, 21, 26, 37.  For the reasons detailed below, *Rooker-Feldman* bars Plaintiff's claims.  Dismissal is further warranted because:  (1) the Eleventh Amendment bars Counts 1 through 4 against HSC and CJ Recktenwald and Judge Hawk in their official capacities, Count 5 against Judge Hawk in his official capacity, and Count 6 against DOH; (2) Judge Hawk is entitled judicial immunity in his individual capacity as to Counts 1, 2, 3, and 5; and (3) CJ Recktenwald is entitled to legislative immunity in his individual capacity as to Counts 1 through 4.

## A.    *Rooker-Feldman* Doctrine

Defendants argue that the Court lacks jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* doctrine.  ECF No. 12-1 at 16–17; ECF No. 26-1 at 13–16.  Plaintiff counters that *Rooker-Feldman* "has no standing" here because the Complaint does not speak of losing in state court, but of the deprivation of

jurisdiction of his case where Defendants lacked the authority to do so.  ECF No.

31 at 6; ECF No. 35 at 6.

"Under *Rooker–Feldman*, lower federal courts are without subject matter

jurisdiction to review state court decisions, and state court litigants may therefore

only obtain federal review by filing a petition for a writ of certiorari in the

Supreme Court of the United States."  *Mothershed v. Justs. of the Sup. Ct.*, 410

F.3d 602, 606 (9th Cir. 2005) (citations omitted).  District courts are barred from

exercising jurisdiction over not only direct appeals of state court decisions, "but

also over the 'de facto equivalent' of such an appeal."  *Cooper v. Ramos*, 704 F.3d

772, 777 (9th Cir. 2012) (citation omitted).  Courts "pay close attention to the *relief*

sought by the federal-court plaintiff" in determining whether an action is a de facto

appeal.  *Id.* at 777–78 (internal quotation marks and citation omitted).  A de facto

appeal is found "when the plaintiff in federal district court complains of a legal

wrong allegedly committed by the state court, and seeks relief from the judgment

of that court."  *Id.* at 778 (internal quotation marks and citations omitted); *see also*

*Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (explaining that a

plaintiff's claims must arise from the state court judgment, not merely "when a

party fails to obtain relief in state court" (citation omitted)); *Bianchi v.*

*Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (explaining that *Rooker-Feldman*

precludes adjudication of claims when the redress sought by the plaintiff is an "undoing" of the prior state court judgment).

*Rooker-Feldman* does not "prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation." *Mothershed*, 410 F.3d at 606. However, district courts lack jurisdiction "'over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional,'" which may only be reviewed by the Supreme Court. *Id.* at 607 (citations omitted). As-applied constitutional claims are barred because they are de facto appeals of state court decisions. *See Scheer v. Kelly*, 817 F.3d 1183, 1186 (9th Cir. 2016).

When a case "is, in part, a forbidden de facto appeal from a judicial decision of a state court," a federal court "must refuse to hear the forbidden appeal." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). "As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Id.* Claims are "inextricably intertwined" "where 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Cooper*, 704 F.3d at 779 (some internal quotation marks and citation omitted).

Applying this framework, the Court finds that Plaintiff's claims are barred by *Rooker-Feldman*.  Plaintiff denies that this case concerns his state court loss, but that is precisely what he challenges.  Plaintiff not only seeks damages for alleged constitutional violations, but also injunctive and declaratory remedies that are designed to undo his state court loss.  *See* Compl. at 9.  While Plaintiff also challenges the constitutionality of his inability to appeal the state court judgment, conduct discovery, and present a defense, they are as-applied constitutional claims concerning his state court proceedings.  Plaintiff's claims are therefore barred by *Rooker-Feldman* for the reasons that follow.

### 1.    Plaintiff's Claims Are De Facto Appeals

The constitutional violations articulated in Counts 1, 2, 3, 5, and a portion of 6, are de facto appeals of the state court proceedings because Plaintiff presents as-applied constitutional claims and complains of legal wrongs committed by Judge Hawk during the course of the proceedings.  Count 1 alleges that Plaintiff's due process rights were violated because he was unable to appeal.  Compl. ¶ 22.  Count 2 asserts that Plaintiff's due process rights were violated because he was denied the right to present a defense.  *Id.* ¶ 23.  Count 3 claims that Plaintiff has a liberty interest in Defendants' adherence to the Hawai'i Constitution by not denying him the right to due process, equal protection, and freedom from harassment and retaliation by a judge.  *Id.* ¶ 24.  These counts arise out of Plaintiff's state court

proceedings and are premised on purported infirmities — denial of right to appeal, inability to present a defense, and harassment and retaliation by Judge Hawk — that violated his Fourteenth Amendment rights.

Count 5 asserts that Defendants retaliated against Plaintiff, in violation of the Fourteenth Amendment, through their "act[s], actions and inaction" due to the filing of his civil rights complaint. *Id.* ¶ 26. The referenced civil rights complaint appears to be Plaintiff's counterclaim from state court because that document is captioned, "COUNTER CLAIM CIVIL RIGHTS COMPLAINT."[4] ECF No. 12-8 at 1; ECF No. 12-10 at 3. The counterclaim addressed Watson-Wade's failure to: (1) inform Plaintiff that the rental was unpermitted or that electrical work was not performed by a licensed electrician, and (2) address health and safety hazards brought to her attention or make necessary repairs. ECF No. 12-8. Plaintiff asserted declaratory relief, inhuman living conditions, and retaliation claims. *Id.* at 5–6. Judge Hawk dismissed the counterclaim with prejudice after the parties presented evidence and arguments. ECF No. 12-10 at 8.

Although Count 5 is improperly attributed to Defendants generally, it essentially alleges that the conduct that is the subject of this lawsuit also constitutes

---

[4] Interpreting "civil rights complaint" as the Complaint in this case would make no sense because Defendants' *past* actions/inaction could not constitute retaliation for the commencement of this action.

retaliation for the counterclaim.  This count cannot reasonably be attributed to any Defendants besides Judge Hawk and Watson-Wade.  None of the other Defendants were involved with Plaintiff's state court proceedings and so could not have retaliated against him by engaging in the conduct they are accused of here *in response* to the filing of the counterclaim, and Plaintiff pleads no facts suggesting otherwise.[5]

Properly framed, Count 5 arises from the state court proceedings.  Judge Hawk's challenged actions exclusively occurred during the course of the state court proceedings.  Compl. ¶ 15.  And Plaintiff accuses Watson-Wade of subjecting him to health and safety hazards and failing to rectify those hazards as his landlord.  *Id.* ¶ 21.  It is unclear how these acts/inaction that were the subject of the counterclaim could *also* be a retaliatory response to the counterclaim.  Putting aside the implausibility of this allegation, however, Plaintiff currently challenges

---

[5] For example, CJ Recktenwald and HSC are alleged to have promulgated rules that violate Plaintiff's constitutional rights.  But the rules were promulgated well before Plaintiff filed his counterclaim on July 26, 2021, so the promulgation could not be retaliatory.  ECF No. 12-8.  Neither could DOH's or DPW's inaction have been retaliatory, based on Plaintiff's allegations.  Plaintiff avers that DOH and DPW failed to require Watson-Wade's rental to meet certain federal and state safety codes.  However, because the counterclaim concerned the rental's hazards, DOH's and DPW's failures were not reactive.

the constitutionality of conduct that was already considered, and associated claims dismissed, in the state court proceedings.  *Rooker-Feldman* prohibits this.[6]

Count 6 avers that Defendants violated the U.S. Constitution and the Hawai'i Constitution by failing to ensure that Plaintiff was not subject to health and safety hazards or require Watson-Wade to rent a safe, permitted structure meeting all state and federal safety codes and passing state inspections.  *Id.* ¶ 27.  It also generally asserts that each Defendant violated Plaintiff's Fourteenth Amendment rights, subjected him to health and safety hazards, and denied him due process by precluding an appeal.  *Id.* ¶ 28.

To the extent Plaintiff alleges that Watson-Wade subjected him to health and safety hazards and that Defendants denied him due process by disallowing an appeal, Count 6 likewise stems from the state court proceedings for the reasons already articulated.  Counts 1, 2, 3, 5, and 6 therefore "constitute a particularized challenge to [the state court] results."  *Mothershed*, 410 F.3d at 608; *see id.* at 605–08 (affirming the district court's determination that the plaintiff's claims — raised under 42 U.S.C. § 1983 for due process and other constitutional violations, as well as state law tort claims — relating to procedural shortcomings in his Arizona and Oklahoma disciplinary proceedings, were barred by *Rooker-Feldman*).

---

[6]  Even if Count 5 as against Watson-Wade was not a de facto appeal, the allegations would be inextricably intertwined with the state court decisions and nevertheless barred by *Rooker-Feldman*.

Moreover, Plaintiff requests:  (1) a declaration that denying him the right to appeal is unconstitutional; (2) injunctive relief prohibiting Defendants from denying him the right to put on a defense and declaring that the policy of disallowing an appeal is unconstitutional; and (3) compensatory and punitive damages totaling $10 million.  Compl. at 9–10.  The requested relief would undercut the proceedings and trial conducted by Judge Hawk, and an award of damages would require a finding that he erred.  *See Cooper*, 704 F.3d at 782 ("Cooper's prayer for relief in the form of monetary and punitive damages, although distinct from his prayer for a declaratory judgment that he is entitled to DNA testing, is contingent upon a finding that the state court decision was in error."); *Henrichs*, 474 F.3d at 616.  Accordingly, these claims constitute a de facto appeal and are consequently barred by *Rooker-Feldman*.

Having determined that this case is in part a de facto appeal, the Court must ascertain whether the remaining claims "are '"inextricably intertwined" with an issue resolved by the state court judicial decision from which the forbidden de facto appeal is taken.'"  *Cooper*, 704 F.3d at 781 (*quoting Noel*, 341 F.3d at 1165).

> As a practical matter, the "inextricably intertwined" test . . . is likely to apply primarily in cases in which the state court both promulgates and applies the rule at issue — that is, to the category of cases in which the local court has acted in both legislative and a judicial capacity — and in which the loser in state court later challenges in federal court both the rule and its application.

18

*Noel*, 341 F.3d at 1158.

### 2. Count 4 And The Balance Of Count 6 Are Inextricably Intertwined With The Forbidden Appeal

Count 4 alleges that CJ Recktenwald and HSC violated the Due Process Clause of the Fourteenth Amendment by promulgating rules and regulations prohibiting individuals from conducting discovery upon the State in order to present a defense and denying a right to appeal.  Compl. ¶ 25.  In other words, Plaintiff challenges his state court proceedings by claiming that the rules applied by Judge Hawk during those proceedings, and his subsequent inability to appeal, were unconstitutional.  Were the Court to grant relief on this claim by declaring that CJ Recktenwald and HSC violated the Constitution by promulgating the challenged rules, Judge Hawk's decisions would effectively be voided.  As such, Count Four is "inextricably intertwined" with decisions made in the state court proceedings that are the subject of the de facto appeal.  Adjudicating Count 4 "would undercut the state ruling or require" the Court "to interpret the application of state laws or procedural rules." *Bianchi*, 334 F.3d at 898.  The Court must therefore dismiss Count 4 for lack of subject matter jurisdiction.  *See id.*

DPW argues that Count 6 is inextricably intertwined with decisions in the state court proceedings because Plaintiff filed a counterclaim there.  ECF No. 12-1 at 16–17.  It contends that adjudication of the federal claims here could undermine Judge Hawk's dismissal of the counterclaim.  *Id.* at 17.  Construing the balance of

Count 6 liberally, the primary allegations — failure to ensure that Plaintiff was not subject to health and safety hazards or require Watson-Wade to rent a safe, permitted structure meeting all state and federal safety codes and passing state inspections — could only reasonably pertain to DOH and DPW.  Resolution of these allegations would undercut Judge Hawk's dismissal of Plaintiff's counterclaims against Watson-Wade regarding the safety and habitability of the rental, and would potentially require the Court to interpret the application of state laws.  Although Count 6 largely concerns DOH's and DPW's purported failures, which were not before Judge Hawk, DOH's and DPW's liability would be predicated on Watson-Wade renting Plaintiff an unsafe dwelling.  Adjudicating the balance of Count 6 would therefore necessitate a finding that the rental was unsafe and caused Plaintiff harm, in contravention of Judge Hawk's dismissal of the counterclaim.  As such, the Court finds that the balance of Count 6 is inextricably intertwined with decisions made in the state court proceedings.

For these reasons, Counts 1, 2, 3, 5 and the portion of Count 6 against Watson-Wade constitute a de facto appeal of the state court proceedings, and Count 4 and the balance of Count 6 are "inextricably intertwined" with the forbidden appeal.  Plaintiff's claims must accordingly be dismissed under *Rooker-Feldman*.

**B.      Eleventh Amendment**

If Plaintiff's claims were not barred by *Rooker-Feldman*, they would be subject to dismissal pursuant to the Eleventh Amendment in part.   "The Eleventh Amendment shields unconsenting states from suits in federal court," *K.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)), and bars individuals from bringing lawsuits against a state or an instrumentality of a state for monetary damages or other retrospective relief.  *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).  It "applies regardless of the nature of relief sought and extends to state instrumentalities and agencies."  *Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)).  Suits against state officials in their official capacities are likewise barred because they constitute suits against the state itself.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  State law claims asserted in federal court against states, state agencies, and state officials acting in their official capacities are barred by the Eleventh Amendment.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Cent. Rsrv. Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1160–61 (9th Cir. 1988).

Eleventh Amendment immunity is not absolute, however.  Congress may abrogate a state's immunity, or a state may waive immunity.  *See Clark v.*

*California*, 123 F.3d 1267, 1269 (9th Cir. 1997).  In addition, under the *Ex parte Young* exception to Eleventh Amendment immunity, "private individuals may sue state officials in federal court for *prospective* relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity."  *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011)).  *Ex parte Young* is based on the proposition "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."  *Va. Office for Prot. & Advocacy*, 563 U.S. at 255.  It does not apply "when 'the state is the real, substantial party in interest.'"  *Id.* (some internal quotation marks and citation omitted).  "A state is deemed to be the real party in interest where 'the judgment sought would . . . interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'"  *Cent. Rsrv.*, 852 F.2d at 1161 (alteration in original) (some internal quotation marks and citation omitted).

Here, the State has not consented to suit.  Therefore, the Eleventh Amendment would bar the portion of Count 6 against DOH to the extent it alleges a violation of the Hawai'i Constitution.  Nor has Congress abrogated immunity for 42 U.S.C. §§ 1981, 1983, 1985, and 1986, pursuant to which Plaintiff brings his

claims. *See Will*, 491 U.S. at 66–67; *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 975 (9th Cir. 1994) (holding that the Eleventh Amendment bars §§ 1985 and 1986 claims); *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (holding that the Eleventh Amendment bars §§ 1981, 1983 and 1985 claims).

Because Plaintiff seeks monetary damages and retrospective relief, the Eleventh Amendment would bar Plaintiff's claims — were they not barred by *Rooker-Feldman* — against (1) the State;[7] (2) DOH, as an agency of the State, *see Suzuki v. Helicopter Consultants of Maui, Inc.*, Civ. No. 13-00575 JMS-KJM, 2016 WL 9244848, at *3 (D. Haw. Oct. 25, 2016) ("The DOH is [an] agency of the State of Hawaii[.]"); *Hawaiʻi Wildlife Fund v. County of Maui*, Civil No. 12-00198 SOM/BMK, 2012 WL 3263093, at *6 (D. Haw. Aug. 8, 2012) (same); (3) HSC, as an instrumentality of the state, *see Yamano v. Haw. Judiciary*, 765 F. App'x 198, 199 (9th Cir. 2019) ("The district court properly dismissed Yamano's claim against defendant State of Hawaii Judiciary because her claim is barred by the Eleventh Amendment." (citations omitted); *Yamano v. Haw. Judiciary*, Civ. No. 18-00078 SOM-RLP, 2018 WL 3431921, at *4 (D. Haw. July 16, 2018) (deeming the State

---

[7]  Plaintiff names the State as a Defendant but his allegation against it is limited to speculation that the State collaborated with DOH, DPW, and Watson-Wade to allow her to operate "unconstitutional living conditions."  Compl. ¶ 21.

of Hawaii Judiciary an instrumentality of the state); Haw. Const. art. 1, § 1

(conferring the Hawaiʻi state courts with the judicial power of the State); *Simmons*

*v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (barring

claims under the Eleventh Amendment against state courts and their employees, as

arms of the state (citations omitted)); and (4) CJ Recktenwald[8] and Judge Hawk in

their official capacities.[9]  *See, e.g., Rapp v. Disciplinary Bd. of the Haw. Sup. Ct.*,

916 F. Supp. 1525, 1531 (D. Haw. 1996) (applying Eleventh Amendment to the

Justices of HSC).

## C.    Immunity

The Judiciary Defendants also argue that Judge Hawk is entitled to judicial

immunity, and CJ Recktenwald is entitled to qualified immunity, for claims against

them in their individual capacities.  ECF No. 26-1 at 18–24.  If the claims

implicating Judge Hawk in his individual capacity (Counts 1, 2, 3, and 5) were not

dismissed under *Rooker-Feldman*, he would be entitled to judicial immunity.  CJ

Recktenwald would be entitled to legislative immunity in his individual capacity

(Counts 1 through 4) if *Rooker-Feldman* did not apply.  Because this is an

---

[8]  If Plaintiff's claims were construed as seeking *prospective* relief for ongoing violations of federal law against CJ Recktenwald, which does not appear to be the case, they would not be barred by the Eleventh Amendment.

[9]  To the extent Count 1 is asserted against the unidentified state district court clerk who would not file Plaintiff's appeal, it would also be barred by the Eleventh Amendment.

alternative basis for dismissal, the Court addresses legislative immunity, which it finds to be more applicable than qualified immunity based on Plaintiff's allegations.

### 1.   Judicial Immunity

Counts 1, 2, 3, and 5 implicate Judge Hawk's conduct during state court proceedings.  "Judicial immunity is a common law doctrine developed to protect judicial independence" and "[i]t bars suits against judges, and other officials who exercise 'discretionary judgment' similar to that of judges, when the plaintiff's suit is predicated on actions taken in the judge's judicial capacity." *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) (citations omitted).  This "immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted).  Common law judicial immunity bars suits for money damages but does not preclude an award of declaratory or injunctive relief.  *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)); *Moore*, 899 F.3d at 1104 (citing *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984)).  However, Congress amended § 1983 in 1996, expanding the scope of judicial immunity and limiting "the circumstances in which injunctive relief may be granted against judges." *Moore*, 899 F.3d at 1104.  Section 1983 states that "in

any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity only covers judicial acts, not non-judicial acts such as "'the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform.'" *Lund v. Cowan*, 5 F.4th 964, 971 (9th Cir. 2021) (citation omitted). These factors are relevant to the determination of whether an act is judicial:

> "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity."

*Id.* (citation omitted).

Judge Hawk's alleged acts were exclusively undertaken during the course of the state court proceedings and satisfy these factors. Plaintiff alleges that Judge Hawk was not acting in a judicial capacity because his goal in the state court proceedings was to punish Plaintiff for serving him with another person's lawsuit. Compl. ¶ 15. But this does not negate the fact that the alleged acts — denying discovery, refusing to recuse, denying the presentation of a defense, and denying

an appeal[10] — are judicial in nature and occurred during the course of the state court proceedings before Judge Hawk.  Even assuming that Judge Hawk's actions and decisions were designed to punish Plaintiff, he would not be deprived of judicial immunity, as "[a] judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority." *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999) (citation omitted). A judge will only be denied immunity "when he has acted in the 'clear absence of all jurisdiction.'"  *Stump v. Sparkman*, 435 U.S. 349, 357 & n.7 (1978) (citation omitted) (providing as an example of a judge acting in the "clear absence of all jurisdiction" a probate judge having jurisdiction over wills and trusts who presides over a criminal trial).  No such conduct is alleged here.  Plaintiff's claims concern Judge Hawk's conduct in his role as a state district court judge.  Judge Hawk is therefore entitled to judicial immunity, even as to declaratory and injunctive relief.[11]  *See Craig v. Villicana*, 676 F. App'x 716, 716 (9th Cir. 2017) (affirming application of judicial immunity to state court judge and noting the extension of judicial immunity to declaratory and other equitable relief (citation omitted)).

---

[10]  Plaintiff's claims regarding his inability to appeal appear to be primarily directed at CJ Recktenwald and HSC but Plaintiff also alleges that Judge Hawk stated that his decision was final and could not be appealed.  Compl. ¶¶ 11, 25.

[11]  Plaintiff does not allege that "a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.

### 2.    Legislative Immunity

In Count 4, Plaintiff alleges that CJ Recktenwald and HSC promulgated rules denying him the right to conduct discovery, present a defense, and appeal. To the extent Counts 1 through 3 implicate CJ Recktenwald, they concern the same allegations raised in Count 4.

"Legislators are entitled to 'absolute common-law immunity against civil suits for their legislative acts, which is parallel to the immunity provided by the Speech or Debate Clause.'" *Schmidt v. Contra Costa County*, 693 F.3d 1122, 1132 (9th Cir. 2012) (some internal quotation marks and citation omitted). "Legislative immunity applies to actions for damages and for injunctive relief." *Id.* (citation omitted) (applying legislative immunity to the judge defendants for adopting and applying a policy). "[W]hen judges perform legislative functions, they too may be entitled to legislative immunity." *Id.* at 1133 (footnote and citations omitted); *see Hirsh v. Justs. of the Sup. Ct. of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) (per curiam) (citing *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 734 (1980)).

The threshold inquiry in evaluating legislative immunity is whether HSC has the authority to regulate small claims division proceedings in state district court, which it did by promulgating and adopting the Rules of the Small Claims Division of the District Courts. *See Schmidt*, 693 F.3d at 1132. The Hawaiʻi Constitution

established the State judiciary, including HSC.  Section 1 of article VI provides:

"The judicial power of the State shall be vested in one supreme court, one

intermediate appellate court, circuit courts, district courts and in such other courts

as the legislature may from time to time establish."  Haw. Const. art. VI, § 1.  HSC

is authorized "to promulgate rules and regulations in all civil and criminal cases for

all courts relating to process, practice, procedure and appeals, which shall have the

force and effect of law," and "consist[s] of a chief justice and four associate

justices."  *Id.* §§ 2, 7; *see also* Hawai'i Revised Statutes ("HRS") § 602-11 ("The

supreme court shall have power to promulgate rules in all civil and criminal cases

for all courts relating to process, practices, procedure and appeals, which shall have

the force and effect of law.").  Thus, it is clear that HSC has the authority to

promulgate rules and procedures, including those challenged in this lawsuit that do

not provide for discovery and prohibit appeals.  *See* Rules of the Small Claims

Division of the District Courts ("RSCD") Rule 12 (allowing judgment to be set

aside upon an application made within ten days following the entry of judgment

and prohibiting parties from appealing from a small claims division judgment).  As

a result, CJ Recktenwald is eligible for legislative immunity.  *See Schmidt*, 693

F.3d at 1135.

"[L]egislators are absolutely immune from liability under § 1983 for their

legislative acts."  *Id.* (alteration in original) (internal quotation marks and citation

omitted).  To determine if an act is legislative, courts focus on "the character and effect" of the act, which involves consideration of these factors:

> "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation."

*Id.* (citation omitted).  Factors (1) and (2) are largely related, as are factors (3) and (4), "and they are not mutually exclusive."  *Id.* (citation omitted).  The Court's inquiry disregards intent and motive.  *See id.* at 1136 (citation omitted).

The first two factors demonstrate that HSC's promulgation of rules was legislative in nature because the rules govern all small claims proceedings and the public at large.  At a minimum, the fourth factor also weighs in favor of legislative immunity because the adoption of the rules was discretionary and has prospective implications.  *See id.* at 1137 ("The hallmarks of traditional legislation include the use of discretion, the making of policy that implicates budgetary priorities and the provision of services, and prospective implications that reach beyond the particular persons immediately impacted." (citation omitted)).  The Court therefore concludes that CJ Recktenwald is "entitled to absolute legislative immunity for actions relating to the promulgation of . . . rules."  *Hirsh*, 67 F.3d at 715 (citation omitted).

In sum, the Court concludes that Plaintiff's claims are subject to dismissal on the following grounds:

(1)     *Rooker-Feldman* bars Plaintiff's claims and subject matter jurisdiction is therefore lacking.  Counts 1, 2, 3, 5, and 6 (against Watson-Wade) are de facto appeals.  Counts 4 and 6 (against DOH and DPW) are inextricably intertwined with the forbidden appeal.

(2)     Alternatively, Defendants are entitled to:

     (a)     Eleventh Amendment immunity — Counts 1 through 4 against HSC and CJ Recktenwald and Judge Hawk in their official capacities, Count 5 against Judge Hawk in his official capacity, and Count 6 against DOH;

     (b)     judicial immunity — Counts 1, 2, 3, and 5 against Judge Hawk in his individual capacity; and

     (c)     legislative immunity — Counts 1 through 4 against CJ Recktenwald in his individual capacity.

In light of the dismissal of Plaintiff's claims, the Court need not address other bases for dismissal proffered by Defendants.

Plaintiff requests leave to amend his Complaint in his oppositions, arguing that he should have an opportunity to cite the rules that Defendants were required to follow to protect his health and safety.  ECF No. 31 at 6–8; ECF No. 35 at 6–8. His proposed amendment would be futile given the grounds for dismissal. Therefore, the Court denies leave to amend.  *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010); *Kinney v. Cantil-Sakauye*, 723 F. App'x 562, 562 (9th Cir. 2018) (affirming sua sponte dismissal of claims on the basis of judicial immunity and *Rooker-Feldman*, and denial of amendment as futile); *Wheeler v. Hilo Med. Ctr., Inc.*, Civil No. 09-00533 JMS/KSC, 2010 WL 1711993, at *8 (D.

Haw. Apr. 27, 2010) (denying amendment as futile when dismissal is on Eleventh Amendment grounds).

The Court accordingly DISMISSES WITHOUT PREJUDICE the Complaint to the extent it lacks subject matter jurisdiction under *Rooker-Feldman*. *See Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) (explaining that dismissals for lack of subject matter jurisdiction should be without prejudice). Dismissal on any of the alternative grounds would be with prejudice. *See Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153–54 (9th Cir. 2018) (dismissal should be with prejudice when the Eleventh Amendment bars a claim); *Stewart v. Aloia*, 231 F. App'x 724, 724–25 (9th Cir. 2007) (affirming dismissal with prejudice of claims against defendants who were entitled to judicial and quasi-judicial immunity); *Chappell v. Robbins*, 73 F.3d 918, 920, 925 (9th Cir. 1996) (affirming dismissal with prejudice on legislative immunity grounds).

//

//

//

//

//

//

//

## CONCLUSION

For the reasons stated herein, the Court GRANTS Defendants' motions to dismiss and joinders.  ECF Nos. 12, 21–22, 26, 30, 37.

IT IS SO ORDERED.

DATED:      Honolulu, Hawaiʻi, August 30, 2022.



Jill A. Otake
United States District Judge